# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CINDY F.,[1] | : | Case No. 3:21-cv-00047 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income in May 2018. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request and a supplemental hearing, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 17), Plaintiff's Reply (Doc. 18), and the administrative record (Doc. 9).

## II. BACKGROUND

Plaintiff initially asserted that she was under a disability beginning October 23, 2016. She subsequently amended her alleged onset date of disability to March 27, 2017. (Doc. 9-2, PageID 118; Doc. 9-5, PageID 274.) At that time, she was forty years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 9-2, PageID 55-67), Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 17), and Plaintiff's Reply (Doc. 18). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

3

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.  FACTS

### A.  The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1:  Plaintiff has not engaged in substantial gainful activity since October 23, 2016,[3] the alleged onset date.
>
> Step 2:  She has the severe impairments of "cervical and lumbar spine degenerative disc disease; status-post total hip replacement in 2019 secondary to history of left hip osteoarthritis; fibromyalgia; migraine-type headaches; obstructive sleep apnea; hepatitis C; obesity; bipolar disorder; depressive disorder; and anxiety disorder."

---

[3] Although Plaintiff amended her alleged disability onset date to March 27, 2017, the ALJ considered the time period beginning with the initially alleged onset date of October 23, 2016. Plaintiff did not allege error with this issue.

| | |
|---|---|
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 CFR § 404.1567(a), subject to the following limitations: "can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; can stand and/or walk 2 hours out of an 8-hour workday; sit 6 hours out of an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; occasionally stoop and crouch; never kneel or crawl; frequent overhead reaching, bilaterally; occasionally push and pull with the left lower extremity; avoid concentrated exposure to extreme heat, extreme cold, humidity, wetness, and atmospheric conditions; no exposure to unprotected heights or moving mechanical parts; limited to simple, routine, and repetitive tasks, defined as work that can be learned in 30 days or less; unable to perform at a production rate pace, but can perform goal-oriented work; occasional contact with coworkers, supervisors, and the general public; and only occasional changes in an otherwise routine work setting, with those changes being explained in advance." |
| | She is unable to perform any of her past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. |

(Doc. 9-2, PageID 57-67.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 67.)

**B.     Family Physician Timothy Dixon, M.D.**

Dr. Dixon completed a medical assessment form about Plaintiff's physical condition on December 23, 2019. (Doc. 9-10, PageID 1968-72.) Dr. Dixon opined that Plaintiff could lift and carry no more than five pounds occasionally and was unable to lift and carry any significant amount of weight on a frequent basis. (*Id.* at PageID 1969.) Dr.

5

Dixon opined that Plaintiff could stand and/or walk for fifteen minutes at a time and for a total of two hours in an eight-hour workday. (*Id.*) Dr. Dixon also opined that Plaintiff could sit for fifteen minutes at a time and for a total of four hours in an eight-hour workday. (*Id.*) He noted that Plaintiff needed to change positions due to pain. (*Id.*) According to Dr. Dixon, Plaintiff could never bend, squat, climb, stoop, crouch, kneel, or crawl, and she could occasionally balance. (*Id.* at PageID 1970.) Dr. Dixon opined that Plaintiff's ability to reach, handle, finger, push, and pull was "affected" by her impairments. (*Id.*) He also opined that Plaintiff's ability to be exposed to heights and moving machinery was "restricted," because she could not "move out of [sic] way" and was unable to climb to heights. (*Id.* at PageID 1971.) Dr. Dixon concluded that Plaintiff was unable to perform light or even sedentary-level work on a sustained basis. (*Id.* at PageID 1971-72.)

The ALJ concluded that Dr. Dixon's opinion was "only minimally persuasive." (Doc. 9-2, PageID 65.) The ALJ explained:

> In December 2019, [Plaintiff] presented to Dr. Dixon asking for paperwork supporting a finding that she cannot work, and she told him that her pain management doctor had restricted her to standing no longer than 20 minutes (23F/6). Dr. Dixon apparently complied with [Plaintiff's] request, but never examined [Plaintiff] at that time (23F/6). Instead, Dr. Dixon simply wrote down [Plaintiff's] subjective complaints in the notes section of the appointment, and then completed the requested paperwork (23F/9). Dr. Dixon opined that [Plaintiff] cannot lift even five pounds, however, objective treatment notes consistently reveal that she has full, 5/5 strength in all of her extremities, and she has reported that her pain is well-controlled with pain medication. Dr. Dixon opined that [Plaintiff] can stand and walk for a total of two hours combined, but can only sit for a total of four hours, just shy of an 8-hour workday. However, Dr. Dixon did not indicate why [Plaintiff] cannot sit longer, other than she has to change positions due to pain. However, [Plaintiff] reported that her pain is well-

6

> controlled with pain medication. Moreover, Dr. Dixon's extreme limitations are not supported by objective physical examination findings and are inconsistent with the overall objective record. Notably, Dr. Dixon's opinion is contradicted by [Plaintiff's] orthopedic specialist (19F). Therefore, Dr. Dixon's opinion is only minimally persuasive.

(*Id.*)

### C. Orthopedist Jennifer Jerele, M.D.

Dr. Jerele completed a medical assessment form on December 24, 2019. (Doc. 9-10, PageID 1973-77.) Dr. Jerele stated that Plaintiff was physically impaired by severe left hip osteoarthritis. (*Id.* at PageID 1973-76.) She limited Plaintiff to lifting and carrying up to twenty-five pounds occasionally and fifteen pounds frequently. (*Id.* at PageID 1974.) She opined that Plaintiff could stand and/or walk for an hour at a time and for a total of no more than four hours in an eight-hour workday. (*Id.*) Dr. Jerele opined that Plaintiff could sit for two to four hours at a time and for a total of eight hours in an eight-hour workday. (*Id.*) According to Dr. Jerele, Plaintiff could never crouch or crawl; occasionally climb, stoop, and kneel; and frequently balance. (*Id.* at PageID 1975.) She opined that Plaintiff was "limited" in pushing and pulling and "restricted" in the ability to tolerate exposure to heights and moving machinery. (*Id.* at PageID 1975-76.) Dr. Jerele concluded that Plaintiff was unable to perform light exertion work. (*Id.* at PageID 1977.) However, Dr. Jerele opined that Plaintiff could perform sedentary-level work on a sustained basis. (*Id.* at PageID 1976.)

The ALJ concluded that Dr. Jerele's opinion was persuasive. (Doc. 9-2, PageID 65.) The ALJ explained:

7

> Dr. Jerele is a specialist, and her findings are consistent with a finding that [Plaintiff] can perform sedentary work. Dr. Jerele's findings are reasonably consistent with the overall objective examination evidence, and are somewhat supported by other physician opinion evidence, albeit with greater restrictions to lifting and standing (1A, 5A). Dr. Jerele's opinion is consistent with the overall objective evidence. Therefore, Dr. Jerele's opinion is persuasive.

(*Id.*)

## V.       LAW AND ANALYSIS

Plaintiff asserts that the ALJ reversibly erred "in evaluating the medical source opinions and medical evidence and Plaintiff's symptom severity thus failing to carry the Step Five burden." (Doc. 12, PageID 2544.) Plaintiff specifically challenges the ALJ's conclusion that primary care provider Dr. Dixon's opinion was only minimally persuasive and that orthopedist Dr. Jerele's opinion was persuasive. (*Id.* at PageID 2548.) As explained below, these arguments are not well-taken.

### A.       Applicable Law

#### 1.       *Evaluation of medical opinion evidence*

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

8

Because Plaintiff filed her claims in August 2018 and March 2019, the new regulations for evaluating medical opinion evidence apply. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors–supportability and consistency–are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[4] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

### *2. Evaluation of symptom severity*

When a claimant alleges symptoms of disabling severity, the Social Security Administration uses a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).

First, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided

10

by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

The ALJ must determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example,

11

the ALJ will consider an individual's statements, keeping in mind that those statements may be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. However, the ALJ "will not find an individual's symptoms inconsistent … on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*. The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

The SSR lists several examples of why individuals may not seek or follow treatment, including side effects from medications, an inability to afford treatment, and an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant to ascertain the reason(s) for the lack of treatment. *Id*. at *9. The ALJ "***will*** explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added).

**B.     Family Physician Timothy Dixon, M.D.**

The ALJ complied with applicable regulations when she found that Dr. Dixon's opinion is minimally persuasive, and her analysis is supported by substantial evidence.

12

The ALJ found that Dr. Dixon's limitations were "not supported by objective physical examination findings and are inconsistent with the overall objective record." (Doc. 9-2, PageID 65.) The ALJ explained that although Dr. Dixon limited Plaintiff to lifting no more than five pounds, the objective treatment notes consistently documented full strength in all extremities. (*Id.*) The ALJ reasoned that Plaintiff's reports of well-controlled pain with medication undermined Dr. Dixon's lifting, standing, walking, and sitting limitations. (*Id.*) The ALJ discussed the lumbar and cervical spine MRI reports. (Doc. 9-2, PageID 61-62.) She acknowledged that Plaintiff underwent a cervical discectomy 2017 and left hip replacement surgery in December 2019. (*Id.*) The ALJ acknowledged that Plaintiff exhibited an antalgic gait on a few occasions, but reasoned that numerous other physical examinations showed a normal gait, full strength in the extremities and intact sensation. (*Id.*)

In sum, the ALJ balanced all the evidence and concluded that Dr. Dixon's opinion was not persuasive. Because the ALJ cited to records from Dr. Dixon and other evidence, she addressed the supportability and consistency factors in compliance with the applicable regulations. 20 C.F.R. § 404.1520c(c)(1), (c)(2). Further, the ALJ's factual findings are supported by substantial evidence and so cannot be reversed by this Court.

### C.     Orthopedist Jennifer Jerele, M.D.

The ALJ complied with applicable regulations when she found that Dr. Jerele's opinion is persuasive, and her findings are supported by substantial evidence.

The ALJ found that Dr. Jerele's opinion was "reasonably consistent with the overall objective evidence" and "somewhat supported by other physician opinion

13

evidence, albeit with greater restrictions to lifting and standing (1A, 5A)." (Doc. 9-2, PageID 65, citing the State agency medical consultants' findings at Doc. 9-3, PageID 152-54, 180-82.) The ALJ's conclusion is supported by her discussion of the medical evidence, i.e., the lumbar and cervical spine MRI reports, Plaintiff's surgical history, and numerous physical examinations showing a normal gait, full strength, and intact sensation. (*Id.* at PageID 61-63.)  The ALJ recognized that Dr. Jerele—an orthopedist—is a specialist (*id.* at PageID 65), which is an appropriate factor to consider under 20 C.F.R. § 404.1520c(c)(4). The ALJ balanced the evidence and found that Dr. Jerele's opinion was persuasive. The ALJ addressed the supportability and consistency of Dr. Jerele's opinion as required by 20 C.F.R. § 404.1520c(b)(2), (c)(1), and (c)(2),[5] and her findings are supported by substantial evidence.

Plaintiff contends that "[t]he ALJ identifies Dr. Jerele as a 'specialist,' yet fails to account for Dr. Jerele's attention to only that specific area of expertise—Fisher's left hip impairment. Dr. Jerele specifically attributed her restrictions only to 'severe left hip OA.'" (Doc. 12, PageID 2548.) But the ALJ did not mechanically adopt Dr. Jerele's limitations, which were clearly based on a diagnosis of severe left hip osteoarthritis. (Doc. 9-10, PageID 1973-76.) Instead, the ALJ's limitations are more restrictive than those that were identified by Dr. Jerele. For example, although Dr. Jerele opined that

---

[5] The supportability factor requires consideration of the "objective medical evidence and supporting explanations ***presented by a medical source*** . . . ." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). By contrast, "consistency" involves comparing a medical opinion or prior administrative medical finding with "***the evidence from other medical sources and nonmedical sources*** in the claim." 20 C.F.R. § 416.920c(c)(2) (emphasis added). The ALJ appears to have conflated these terms. Nevertheless, the ALJ addressed both factors because she considered the objective findings documented by Dr. Jerele, as well as other medical and non-medical evidence of record.

Plaintiff could lift and carry up to twenty-five pounds occasionally and fifteen pounds frequently (*id*. at PageID 1974), the ALJ's RFC limited Plaintiff to lifting and carrying up to ten pounds occasionally and less then ten pounds frequently. (Doc. 9-2, PageID 60.) Also, while Dr. Jerele opined that Plaintiff could stand and/or walk a total of four hours in an eight-hour workday (Doc. 9-10 at PageID 1974), the ALJ's RFC limited Plaintiff to standing and/or walking a total of two hours in an eight-hour workday. (Doc. 9-2, PageID 60.) Therefore, Plaintiff's argument is not well-taken.

Plaintiff also asserts: "Dr. Jerele's opinion was completed on December 24, 2019, the same month as Fisher's left hip replacement surgery . . . . Dr. Jerele's opinion must be taken in context, acknowledging the timing of the opinion and the multitude of additional severe impairments contributing to Fisher's overall level of restriction." (*Id.*) The Court finds that the ALJ did place Dr. Jerele's opinion in the context of other evidence in the record. As noted, for example, the ALJ included more restrictive limitations in the RFC than Dr. Jerele identified in her opinion. (Doc. 9-2, PageID 60.) The ALJ's factual findings are supported by substantial evidence and so cannot be reversed by this Court.

### D. Evaluation of Symptom Severity

The ALJ complied with the two-step process required by SSR 16-3p. The ALJ determined that Plaintiff has medically determinable impairments (cervical and lumbar spine degenerative disc disease, status-post total hip replacement in 2019 secondary to history of left hip osteoarthritis, fibromyalgia, migraine-type headaches, obstructive sleep apnea, hepatitis C, obesity, bipolar disorder, depressive disorder, and anxiety disorder) that could reasonably cause the type of symptomatology alleged. (Doc. 9-2, PageID 58,

15

61.) The ALJ then considered the evidence in the record and found Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms to be not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 61.)

Plaintiff challenges the ALJ's findings at the second step of the analysis, arguing that "[t]he totality of the medical record is not inconsistent with the symptom severity reported by Fisher or the restrictions set forth by Dr. Dixon." (Doc. 12, PageID 2549.) Because substantial evidence supports the ALJ's conclusion, the Court cannot weigh the evidence itself and must instead affirm the ALJ's decision.

The ALJ summarized Plaintiff's testimony at both hearings. (Doc. 9-2, PageID 61.) She noted that Plaintiff complained of back and hip pain, headaches, and fatigue, and stated that she is able to lift no more than five pounds and needs to lie down for seventy-five percent of the day. (*Id.*) The ALJ acknowledged that Plaintiff reported similar complaints to her medical providers on several occasions. (*Id.* at PageID 61-62.) The ALJ acknowledged Plaintiff's history of musculoskeletal issues, as evidenced by MRI reports, a cervical discectomy, left hip replacement surgery, and pain management. (*Id.*) She cited to records that documented some gait difficulties and pain with range of motion. (*Id.*) The ALJ compared this evidence to numerous records that documented full strength in the extremities, intact sensation, and on numerous occasions, a normal gait with no use of any ambulatory aids. (*Id.*) The ALJ noted that several conditions such as headaches and hepatitis C had responded well to treatment. (*Id.*) The ALJ concluded that the balance of the evidence did not support Plaintiff's allegations of symptom severity. (*Id.* at PageID 61.) The ALJ accounted for the preponderance of the evidence by limiting Plaintiff to the

reduced range of sedentary work set forth in the RFC. (Doc. 9-2, PageID 60, 63.) The Court finds that the ALJ's conclusions are supported by substantial evidence.

Plaintiff argues that her "strong work history should weigh in favor of according her symptom severity complaints substantial weight." (Doc. 12, PageID 2550.) This argument essentially challenges the ALJ's assessment of Plaintiff's credibility. This Court must give great weight and deference to an ALJ's credibility assessment. *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 801 (6th Cir. 2004). An ALJ's credibility findings "are virtually unchallengeable" absent compelling reasons. *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. App'x 508, 511 (6th Cir. 2013). The Sixth Circuit has considered the argument raised by Plaintiff and has held that ALJs are "***not*** required to explicitly discuss [a claimant's] work history when assessing his credibility." *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (emphasis added). Thus, Plaintiff has not identified any compelling reason to disturb the ALJ's credibility assessment.

## VI. CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework and substantial evidence supports her conclusions. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 12) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

                                               */s/ Caroline H. Gentry*
                                               Caroline H. Gentry
                                               United States Magistrate Judge